May it please the Court, Lawrence Rolfing, on behalf of Mr. Rosales, who is the real party in interest to this fee appeal. This case presents the problem that many of the district courts in these social security cases are facing, a lack of guidance on how to resolve fee appeals or fee petitions for attorney fees. Well, Counsel, what you've got to persuade us of is that sufficient attention wasn't given to the fact of an agreement which was not on the basis of hours spent, but rather on success. Yes, Your Honor. In the case of Kerr v. Screen Actors Guild, this Court long ago set forth the factors for resolving the question of a reasonable fee. Some of those factors apply to a contingency fee and some do not. Well, I think the contingency fee thing is the only thing that's really at issue here. Was there adequate consideration given to that? Well, Your Honor, this Court prior to the Supreme Court decision in Gisbrecht used a modified or hybrid lodestar approach by enhancing an hourly rate times the number of hours. Mr. Black did not hire my firm or Mr. Rosales in particular to invest a certain number of hours in his case. He hired us to achieve a certain result. According to Judge Zarefsky's decision, it doesn't matter whether Mr. Black received $40,000 in past due benefits or, in this case, $96,000 in past due benefits. It's the same $500 an hour rate for the attorney time. That is not a contingency fee. That is not what Mr. Black contracted for. That is not what Mr. Rosales worked upon. That is not the agreement that I signed. That decision, by applying a simple hourly rate, even if it is, in Judge Zarefsky's mind, an enhanced hourly rate, is not a contingency fee because it does not give proper weight and consideration to the amount involved in the results obtained, nor does it give sufficient weight to the awards and other cases, which are all contingency factors. Ginsburg doesn't say that you have to award a contingency fee. Doesn't it say you have to be cognizant of what the contingency fee is, but you can adjust the fee based on what you feel are reasonable factors? Well, I think Ginsburg erects a mild presumption in favor of the contingency fee that's the subject of the contract. And I think the court is obligated to look at a number of factors, including the time invested and possibly what your ordinary hourly rate is. Mr. Rosales doesn't have an ordinary hourly rate. In assessing whether what Congress directed us to search for a reasonable fee, not necessarily the reasonable fee, and it really is in the mild presumption in favor of the contingency fee contract that we see in Judge Zarefsky's decision, we see no deference to or no weight given to the contingency contract. Judge Zarefsky just picked an hourly rate that he was comfortable with. Did he acknowledge the contingency fee agreement? That was one of the first things he said in his opinion, wasn't it? Yes, and then he said that the effective hourly rate that would result from enforcing the contingency, even though Mr. Rosales did not ask for the entire 25 percent, Judge Zarefsky threw out the contingency fee agreement because he felt that it would be a fee in the envy of other practitioners. The papers that Mr. Rosales presented to Judge Zarefsky for consideration on the fee motion indicate that this is not a field of law that is awash with lawyers scrambling to handle these kinds of cases. It simply isn't true. Our firm handles 35 percent of the central district's docket because nobody else wants to do this kind of work. Let me ask you, the judge says yes, this would be the envy of practitioners in any field. You had already reduced your percentage, correct, from 25 to about 17? Yes, Your Honor. And the justification for that presented was what? Well, I don't think it was actually spelled out adequately in the papers, although it is hinted at. Mr. Rosales was asking for an administrative fee under section 406, subsection A from the Social Security Administration, and he was asking for basically roughly the balance of the 25 percent in the district court. There's some question as to whether or not. Anyway, I mean, I was confused by it, and I'm wondering on an abuse of discretion standard how we look at that, because it's already reduced once but without an explanation as to why that's a big haircut. So it seems to me, or do you agree that that's the starting point, the 17,000? I think the 17 percent, which I guess ends up to be about that. Yeah. Mr. Black received $96,000 in past due benefits. The Administration withheld slightly in excess of $24,000. Mr. Rosales asked for $7,000 from the Administration. That's Exhibit 5. And he asked for, not Exhibit 5, but some of the other exhibits, but he asked for $17,000. $17,000, which was? Roughly the balance. It's approximately 18 percent. 17, 18 percent. So is that the starting point that the district judge starts from is whether that's a reasonable fee, and then the judge looks at the fact that there's a contingency agreement? Yes. Okay, so now you're the district judge and you have $17,000, you have a contingency fee agreement. Where, in your view, did the judge make a legal error? I think that the legal error that Judge Zarefsky made was in failing to give any weight to the contingency factor. The contingency factor being a percentage of the past due benefits necessarily implies that as benefits, as the past due benefits go up, up to the cautionary point that the Supreme Court identified, that the fee will go up. Let me see if I can state this a different way. I mean, the judge mentions the contingency agreement, but I suppose in a negative way, in the sense of just saying that contingency fee would give you a pumped-up fee. Yes. And it's your position that the contingency fee agreement, if anything, shouldn't put you in the hole, but at least should permit you to get somewhere above what might be a standard hourly fee. I mean, it ought to give you a positive, not a negative like the district judge gave you. Yes, and as the size of the case changes, the amount of the fee would necessarily change, and setting a flat hourly rate without consideration to the amount involved in the risks endured and the delays, that this kind of hourly rate assumption is inappropriate. I also wanted to get back to the point that Judge Dreske made about the fee being the envy of practitioners in any field. The Supreme Court decision in Delaware 2, Justice Blackman writing in dissent, states that if we don't pay contingency lawyers a premium, all that we'll end up practicing in that field are the underemployed and the less worthy, the less competent. But you did get a premium, didn't you? Well, it is a premium in that the hourly rate is higher than Mr. Rezales probably could have commanded as an hourly lawyer doing hourly work, but when you look at the aggregate numbers and you look at Justice O'Connor's opinion in Delaware 2 and Justice Blackman's dissent, that's five votes, you don't, and this Court's decision in Fadal, you don't look at the risk in an individual case, you look at the risk in the class of cases. And Mr. Rezales' declaration in the papers that were attached from the Social Security Administration indicate that on average, Social Security practitioners nationwide win about 36 percent of these cases. Do we know, counsel, have any statistics as to the percentage contingency fees that when cases are taken on a contingency basis, what's the average of the percents that are given? Do we know? Well, Magistrate Judge Block, in a case Ellick v. Barnhart decided last summer, did a survey of that and found that in the majority of cases, the court either awarded the full contingency fee or awarded what the plaintiff's lawyer had reduced the fee request to. That seems to be the majority. In other cases, courts have resorted, as Judge Zareski did in this case, to a hybrid or a modified lodestar approach. And I think that the district courts desperately need the guidance to go back to that mild presumption in favor of the contingency fee. And I think that the district courts need to be mindful of the contingency contract, mindful that the contingency fees are necessarily going to be enhanced, and that in light of the risks of this class of cases taken as a whole on the aggregate, not lawyer by lawyer, but on the whole, that the kind of fee that Mr. Rezales asked for, which is not far different from what he got in other cases, is not an unreasonable fee, and it is what the Congress directed us to inquire to is a reasonable fee. Do you give a choice to your clients to either pay on an hourly or contingency? Section 406B actually requires us to handle these cases on a contingency fee basis. Where the object of the Federal lawsuit is past due benefits, whether disability or retirement or widow's benefits, where the object is past due benefits, I believe that we are required by statute to have a contingency contract. We cannot do it on an hourly basis, nor could most of my clients afford that. And may I ask another question? In the magistrate judge's survey, was 25 percent within the heartland, if you will, of Social Security contingency fee arrangements? In the case of Ellick v. Barnhart, yes, that is, Your Honor. Could there be a higher contingency fee, or must it be not in excess of 25 percent? In looking at subsection B, Your Honor, the maximum is 25 percent. It cannot be higher. And that's what they're set at, so you then took 17 percent, is that correct, or 18 percent? Yes, Your Honor. Mr. Rezales did. Okay. Thank you. Thank you very much. We didn't know if we would be hearing from Social Security Administration or not, so will we hear from you? Only if you have any questions. I'm happy to answer any questions from the Commissioner's standpoint. Do you have any sense of what the usual percentage that's allowed is? You probably see a lot of these cases. I do. Our experience in Skisbrick has been that usually, and I can't say why it wasn't done in this case, usually what the Commissioner does in these cases is file a response in response to these motions for 406B fees, pointing out what we feel are relevant factors for the court's reasonableness analysis. It's just in my own sort of seeing kind of a hodgepodge of the results of these, the district courts in the Central District are actually taking close looks at these 406B petitions. They seem to understand their Gisbert role, so to speak, but no, I really don't have any, you know, I see some reductions here and there, but I can't, again, as Mr. Rolfing pointed out, Ellick v. Barnhart is kind of a good survey of how these cases are sort of all over the map on that. Do you, or should we be giving some guidance? Well, Magistrate Judge Eick and Ellick v. Barnhart certainly wanted some. Again, the district courts see many, many of these Social Security cases. It's definitely a high-volume practice, especially in the Central District of California, in the Ninth Circuit, where our office serves, our Central District is our biggest district. And as the Supreme Court says, the judges who see these cases day in and day out are, you know, so we defer to the district court's discretion. I think that's what the Supreme Court was trying to get at in Gisbert. Thank you.
judges: B. Fletcher, McKeown, Whyte